## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | **No. 24-mj-125** |
| **v.** | ) | |
| | ) | **Magistrate Judge Beth W. Jantz** |
| | ) | |
| **JOHN BANUELOS** | ) | |

### GOVERNMENT'S MEMORANDUM IN SUPPORT OF
### PRE-TRIAL DETENTION

The United States of America, by its attorney, MORRIS PASQUAL, Acting United States Attorney for the Northern District of Illinois, moves to detain John Banuelos pending trial, and the United States files this memorandum in support thereof. Defendant Banuelos entered the restricted perimeter of the United States Capitol Building grounds during the riot that took place on January 6, 2021. While on the grounds, Banuelos made threatening gestures to law enforcement and helped the crowd push against police lines that were established to stop rioters on the west grounds. Banuelos climbed the Inaugural Stage scaffolding, took out his firearm, and fired two shots into the air.

Based on the compelling evidence of Banuelos's dangerous conduct, there are no conditions of release that can reasonably assure the safety of the community. Moreover, as described in detail below, Banuelos has an extensive criminal history and is currently wanted in Utah for two misdemeanor domestic violence offenses after his failure to appear for proceedings.

For these and other reasons set forth herein, the United States moves for Banuelos's pretrial detention pursuant to 18 U.S.C. § 3142(f)(1)(E) because there is no combination of conditions that will reasonably ensure the safety of the community, and pursuant to 18 U.S.C. § 3142(f)(2)(A) because this case involves a serious risk of flight.

## I.    Procedural Background

On March 7, 2024, U.S. Magistrate Judge for the District of Columbia Robin M. Meriweather issued a Criminal Complaint charging Banuelos in violation of 18 U.S.C. § 231 (Civil Disorder); 18 U.S.C. § 1752(a)(1), and (b)(1)(A) (Entering and Remaining Restricted Building or Grounds with a Deadly Weapon); 40 U.S.C. § 5104(e)(2)(D) (Act of Physical Violence in a Capitol Building or Grounds); § 5104(e)(1)(A)(i) (Unauthorized Possession of a Firearm on Capitol Grounds); and § 5104(e)(1)(A)(ii) (Discharge of a Firearm on the Capitol Grounds).

Banuelos was arrested on March 8, 2024, and he had his initial appearance before this Court on the same day.

## II.    FACTUAL BACKGROUND

### A.    The Events of January 6, 2021

On January 6, 2021, a joint session of the United States Congress convened at the U.S. Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting to certify the vote count of the Electoral College of the 2020 Presidential Election, which took place on November 3, 2020 ("Certification"). The joint session began at approximately 1:00

p.m. Eastern Standard Time in the House of Representatives. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

The grounds around the Capitol were posted and cordoned off, and the entire area as well as the Capitol building itself were restricted as that term is used in Title 18, United States Code, Section 1752 due to the fact that the Vice President and the immediate family of the Vice President, among others, would be visiting and did visit the Capitol complex that day.

At around 1:00 p.m., individuals broke through the police lines, toppled the outside barricades protecting the U.S. Capitol, and pushed past USCP and supporting law enforcement officers there to protect the U.S. Capitol. As a result of these and other similar actions by the crowd, the situation at the Capitol became a civil disorder as that term is used in Title 18, United States Code, Section 231. The civil disorder obstructed the ability of the U.S. Secret Service to perform the federally protected function of protecting Vice President Pence.

As they advanced unlawfully onto Capitol grounds and towards the U.S. Capitol building over the next several hours, individuals in the crowd destroyed barricades and metal fencing and assaulted law enforcement officers with fists, poles, thrown objects, and chemical irritant sprays, among other things.

At approximately 2:00 p.m., some people in the crowd forced their way through, up, and over the barricades and law enforcement. The crowd advanced to the exterior

façade of the building. At such time, the Certification proceedings were still underway, and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Beginning shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement.

Between approximately 2:10 p.m., and 2:30 p.m., Vice President Pence evacuated the Senate Chamber, and the Senate and House of Representatives went into recess. Unlawful entrants into the U.S. Capitol building attempted to break into the House chamber by breaking the windows on the chamber door. Both the Senate and the House of Representatives Chamber were eventually evacuated.

Based on these events, all proceedings of the United States Congress, including the Certification, were effectively suspended until shortly after 8:00 p.m. the same day.

**B.**     **The Dangerous Conduct of John Banuelos on January 6**

Banuelos entered the restricted grounds during the riot at the Capitol on January 6. At approximately 1:24 p.m., Banuelos made his way to the front of the crowd opposite the police line. Officers were attempting to reestablish the police line using metal barricades after a skirmish with the crowd. CCTV footage from the Capitol and open source captured Banuelos pointing at officers and kicking the metal barricade at least two times at approximately 1:25 p.m. *Exhibit 1* at 0:52-1:05 and *Exhibit 2*.



*Still from Exhibit 2 at 0:27.*

At approximately 1:26 p.m., CCTV captured Banuelos holding up his gloved hand to form the shape of a "finger gun" and simulated "firing" multiple times in the direction of officers. *Exhibit 3.*



*Still from Exhibit 3*

At approximately 1:56 p.m. Banuelos is captured in CCTV and open-source video, using his body to forcefully push with the crowd against officers in an attempt to breach the line of officers on the northwest side of the West Plaza. *Exhibit 4* and *Exhibit 5*.



*Still from Exhibit 5 at 0:07.*



*Exhibit 6*

The push by the crowd and Banuelos continued intermittently for approximately three minutes. During this sequence, Banuelos raised his jacket to reveal the handle of a firearm in his waistband. *Exhibit 8*.



Exhibit 7

Banuelos moved to the south side of the West Plaza where, at approximately 2:28 p.m., he was a part of a crowd that breached the police line. *Exhibit 9* and *Exhibit 10*. As described above, by 2:28 p.m., the crowd had overrun several police lines at the Capitol and rioters had entered the building by breaking open windows and doors. By this time, Banuelos removed the cowboy hat and changed into a red puffer jacket as depicted in Exhibits 9 and 10 below.



*Still from Exhibit 9 at timestamp 0:56.*



*Still from Exhibit 10 at 0:14.*

At approximately 2:33 p.m., CCTV captured Banuelos scaling the southwest Inaugural Stage scaffolding. Banuelos can be seen waving the crowd towards him before pulling the firearm from his waistband. Open-source media and CCTV captured Banuelos raising the gun over his head, and, at approximately 2:34 p.m., firing two shots into the air. Banuelos returned the firearm to his waistband and climbed down the scaffolding, rejoining the crowd below. *See* Exhibits 11 and 12. The two shots, though not captured on video, are also audible in BWC and other open-source media. *Exhibit 13* at 0:14 *et seq.* and Exhibit 14 at 0:19 *et seq.*



*Still from Exhibit 11.*[1]

## C.    __Additional Investigation and Identification of BANUELOS__

Following January 6, 2021, the FBI issued a photograph of Banuelos as a person of interest in connection with the events at the Capitol (the "Banuelos BOLO"). The Banuelos BOLO was also disseminated on social media platforms including X/Twitter by non-law enforcement including an account identified here as Account 1. In February of 2021, a witness called in a tip identifying Banuelos as the individual flashing the firearm. In July of 2021, Banuelos was investigated for a fatal stabbing in Utah. During questioning, Banuelos told local law enforcement that he went inside the capitol and was the person seen in a video with a gun. In March of 2022, the FBI

---

[1] In Exhibit 11, Banuelos is wearing identical pants and boots to those worn in Exhibit 6.

contacted Banuelos to ask about his claims that he went inside the Capitol. Banuelos told agents he would not speak with them but stated he did not go inside the Capitol. Banuelos hung up and then called agents making incoherent sentences saying people were trying to trick him and were messing with his mind.

On October 4, 2023, an account with vanity name "John Banuelos" and handle @JohnBan21401662 (the "Banuelos Account"), responded to a post concerning the Banuelos BOLO with a video that shows Banuelos racking the slide of a semi-automatic weapon in a video. *Exhibit 15.*[2]



*Still from Exhibit 15*

In January of 2024, FBI agents interviewed Banuelos in response to his social media posts. Banuelos stated he did not make the posts, denied intending to threaten

---

[2] The distinctive tattoo shown in the video matches a tattoo on the hand of Banuelos.

anyone, and claimed that "many" of his posts were done by artificial intelligence. Banuelos further stated that any weapons seen in the video posts were fake and/or done by artificial intelligence and agreed to refrain from posting any further threatening messages.

A few weeks later, on February 8, 2024, a video was posted online that showed Banuelos firing two shots into the air at the Capitol on January 6. *Exhibit 11*. On February 10, 2024, the Banuelos Account posted a response to the February 8th video by that included an image of a semi-automatic firearm that may be an image sourced by Banuelos from the internet.



*Exhibit 16*

On February 10, 2024, Banuelos responded to an X user's call to find all "insurrectionists" with the photo of him at the Capitol on January 6 flashing the butt of his gun. *See Exhibit 7*.

Agents began monitoring Banuelos' cellular location data starting in February 2024 which consistently placed Banuelos at his mother's house in Summit, Illinois.

Agents also observed Banuelos traveling between the property and his place of employment. Banuelos was also captured on a pole camera exiting and entering the basement door of the property. On March 8, 2024, agents executed an arrest and search warrant. Banuelos was in his mother's home in Summit, Illinois. During the search, agents located a bb-gun and what has been determined (as of March 11, 2024) to be a starter pistol revolver[3] in a basement closet that is accessible to others in the home. Also found in the closet was an open safe with cash that was claimed by another family member. Banuelos' wallet was in a room next to the basement door. Banuelos' cell phone was located in a kitchen drawer on the main floor.

During the search, family members at the residence told law enforcement that Banuelos splits his time between his mother's home—where he sleeps when he has work in the morning—and an apartment in Maywood, Illinois. Agents were able to confirm the secondary address. During FBI processing, Banuelos provided a false address, specifically giving the address across the street from his Maywood apartment as his home address, *i.e.*, Banuelos provided house number that ended in 01 rather than 06. Agents executed a warrant at the accurate address in Maywood, where agents found paystubs addressed to Banuelos.

## III.  THIS COURT SHOULD DETAIN DEFENDANT BANUELOS AS A DANGER TO THE COMMUNITY AND AS A SERIOUS FLIGHT RISK

---

[3] The recovered starter pistol appears to be different than the firearm fired on January 6, 2021. Even if it were the same weapon fired by Banuelos on January 6, 2021, the starter pistol is still a "firearm" for purposes of § 3142(f)(1)(E). *See* 18 U.S.C. 921(a)(3) (defining "firearm" as "any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive".

Pursuant to 18 U.S.C. § 3142(a), in relevant part, when a defendant is arrested, the Court "shall issue an order that, pending trial, the person be (1) released on personal recognizance . . . ; (2) released on a condition or a combination of conditions . . . ; or (4) detained under subsection (e)." Detaining a defendant under Section 3142(e) requires a hearing "pursuant to the provisions of subsection (f)." *Id.* at § 3142(e). If the Court determines after that hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the Court must detain the defendant pending trial. *Id.* § 3142 (e)(1). The evidence more than establishes that Banuelos should be detained pending trial.

The government bears the burden of persuasion on the issue of pretrial detention. *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). In determining whether the government has met its burden of persuasion, this Court must consider four factors: (1) the nature and circumstances of the offense charged, including whether, for example, the offense is a crime of violence; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). A judicial officer's finding of dangerousness must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(b); *Stone*, 608 F.3d at 945. When "risk of flight" is the basis for detention, however, the government must only satisfy a preponderance of the evidence standard. *United States v. Portes*, 786 F.2d 758 (7th Cir. 1985); *United States v. Xulam*, 84 F.3d

- 15 -

441, 442 (D.C. Cir. 1996); *United States v. Chimurenga*, 760 F.2d 400, 405-06 (2d Cir. 1985); *United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985); *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985); *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985).

For the reasons below, these factors weigh in favor of detention in this case.

## A. <u>Defendant Banuelos is Charged with a Serious Offense</u>

The nature and circumstances of the offense charged in this case militate strongly in favor of detention. Banuelos has been charged with a serious offense, arising from his conduct on the Capitol grounds. As shown in *Exhibit 7* and *Exhibit 8* above, Banuelos displayed a firearm in his waistband around the time that he and the mob were involved in a struggle with officers. That conduct alone is extremely dangerous given the hostile conditions at the Capitol on January 6. But Banuelos went further. As the mob overran officers, Banuelos climbed the scaffolding into view of other rioters, removed the firearm from his waistband, and fired two shots into the air. This conduct is mind-numbingly dangerous. Any number of life-threatening events could have transpired, *e.g.*, the threat of an active shooter at the Capitol on January 6 could have triggered a lethal response from law enforcement or a stampede of other rioters. Fortunately, none of these events came to pass, but the fact that no such harm ensued does nothing to mitigate the seriousness of Banuelos's actions.

In considering the nature and circumstances of the offense, the Court should also weigh the possible penalty Banuelos faces upon conviction. *See United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990). Here, Banuelos faces statutory

maximum terms of imprisonment of between five to ten years if convicted of the four felony charges in the complaint. This time represents a substantial penalty, which would serve as powerful motivation for Banuelos to flee the jurisdiction were he to be released. This factor thus weighs in favor of detention.

**B.      The Weight of the Evidence is Strong[4]**

The weight of the evidence of Banuelos's dangerousness is strong.

On February 8, 2024, a video was posted online that shows Banuelos firing two shots into the air while at the Capitol. The video has been corroborated by multiple other sources, including CCTV footage from the Capitol and audio of body worn cameras worn by officers.

Since January 6, Banuelos has effectively celebrated and endorsed his dangerous conduct. He has posted direct messages on social media that include firearms in direct response to other users referencing his conduct on January 6. Based on a search conducted at his mother's home on the morning of March 8, 2024, Banuelos continues to have access to a firearm. Specifically, law enforcement recovered a firearm from a closet located in the basement where Banuelos was regularly sleeping.

Finally, and as described in more detail below, Banuelos has a lengthy criminal history that includes 19 arrests, five convictions, and two active bench warrants.

These factors weigh strongly in favor of detention.

**C.      History and Characteristics of the Defendant**

---

[4] "This factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *Stone*, 608 F.3d at 948 (citation omitted).

Banuelos's conduct on January 6 was not an aberration. Banuelos has a lengthy criminal history that includes incidents of violence. Banuelos has been arrested a total of 19 times. Currently, Banuelos has two open domestic assault cases that allegedly took place in August of 2021 and September of 2021. Banuelos is currently wanted out of Utah for both cases for failing to appear to proceedings. The government notes that the victim in both cases has also been arrested for domestic assault against Banuelos.

Banuelos has been convicted a total of five convictions as an adult:

- On December 12, 2003, Banuelos was arrested and subsequently convicted of misdemeanor assault in Illinois. He was sentenced to 1 year supervision.

- On July 16, 2006, Banuelos was arrested and subsequently convicted of misdemeanor resisting arrest in Illinois. He was sentenced to 6 months' supervision.

- On April 25, 2011, Banuelos was arrested and subsequently convicted of misdemeanor fleeing and eluding law enforcement in Illinois. He was sentenced to 1 year supervision.

- On May 14, 2017, Banuelos was arrested and subsequently convicted of possession of marijuana and possession of a controlled substance in Utah. He was sentenced to 30 days' incarceration and 1 year supervision.

- On July 4, 2021, Banuelos was arrested on a warrant from a March 2019 incident, and he was subsequently convicted of assault in Utah. He received a 180-days' incarceration.

On July 4, 2021, Banuelos was investigated for fatally stabbing an individual. Banuelos was not charged with an offense because the incident was determined to be self-defense. However, the incident underscores the potential danger that Banuelos poses to the public were he to be released. The government notes that, during the investigation of the fatal stabbing, Banuelos was arrested on an active warrant stemming from the March 2019 assault described above.

**D.    Danger to the Community Posed by Banuelos's Release**

Banuelos poses a significant safety concern to the public. Banuelos has demonstrated a consistent disregard for the safety of those around him. His conduct on January 6 is severe, but it is not isolated. Banuelos has also demonstrated a pattern of violent and threatening behavior when conflict has arisen. Such incidents include episodes of domestic violence as well as threatening online communications.

Banuelos has also shown a blatant disregard for the law and any conditions that the Court might impose on him. Pursuant to a Utah court protective order entered September 23, 2021, Banuelos is prohibited from possessing a firearm, yet he continues to post videos with what appear to be firearms and have access to firearms, including access to a firearm, a starter pistol, that was recovered by law enforcement during the March 8, 2024 search of his mother's house.[5] Furthermore, Banuelos has

---

[5] As defined in 18 U.S.C. § 921(a)(3).

failed to appear in Utah for domestic violence proceedings there. The danger to the community is severe. His release in this case on any conditions would jeopardize the safety of the public.

### E. <u>Risk of Flight</u>

This case also involves a serious risk of flight as defined in 18 U.S.C. § 3142(f)(2)(A). The defendant is facing potential conviction on multiple felony offenses, including 18 U.S.C. § 1752(b)(1)(A), which carries a statutory maximum penalty of up to ten years of incarceration. Banuelos's criminal history increases the likelihood of a significant period of incarceration. These factors provide considerable motivation for Banuelos to flee.

Banuelos's history suggests that flight is likely in this case. As introduced above, there are two warrants for Banuelos's arrest for his failures to appear in Utah. Banuelos was convicted of Fleeing and Resisting in 2011. Banuelos has used five different aliases and has a history of being transient. In addition to connections in Utah state, Banuelos has previous addresses in Florida, Washington state, and varying locations in Illinois. Furthermore, Banuelos proceeded to give an address he has no apparent connection to during processing.

For these reasons, the Court should find by a preponderance of the evidence that Banuelos poses a serious risk of flight and detain him on that basis.

## IV. <u>CONCLUSION</u>

Banuelos has shown a disregard for the laws of this country and the safety of others, which makes it inconceivable to trust that he would comply with any release

conditions imposed by this Court. Banuelos must be detained pending trial to protect the safety of the community and ensure his return to Court. For the foregoing reasons, as well as any reasons which may be set forth at a hearing on this motion, the government respectfully submits that there exists no condition or combination of conditions which would assure the safety of any person or the community, or which would ensure the defendant's appearance at his court hearings.

Accordingly, the government requests that the Court order the defendant detained pending his initial appearance in Washington D.C. which is currently set for March 21, 2024, only 8 days after his detention hearing.

Respectfully submitted.

MORRIS PASQUAL
Acting United States Attorney

By:  /s/    *LeighAnn M. Thomas*
LEIGHANN M. THOMAS
Assistant United States Attorney
219 South Dearborn Street, 5th Floor
Chicago, Illinois 60604
(312) 469-6314

Dated: March 12, 2024